UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOHN WILLIAM O'CONNOR | )  CASE NO. 3:13-04514-JAF |
| | )  CHAPTER 11 |
| | ) |
| _____ Debtor _____ | ) |

## DEBTOR'S PLAN OF REORGANIZATION

John William O'Connor, as Debtor and Debtor-in-Possession, proposes the following Plan of Reorganization.

## ARTICLE 1
## DEFINITIONS

1.1. "ADMINISTRATIVE EXPENSE" shall mean any cost or expense of administration of the Chapter 11 case allowed under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

1.2. "ALLOWED" shall mean any such Claim, proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on their schedules as liquidated in amount and not disputed, contingent or unknown as to value, and, in either case, a Claim as to which no objection to the allowance thereof has been filed on or before the Confirmation Date or such other applicable period of limitation fixed by the Plan. Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on such Claim for the period from and after the Petition Date.

1.3. "BANKRUPTCY CODE" shall mean Title 11 of the United States Code.

1

1.4. **"CLAIM"** shall mean a duly listed or timely filed claim which is Allowed and ordered paid by the Court.

1.5. **"CONFIRMATION DATE"** means the date on which the Court shall enter the Confirmation Order.

1.6. **"COURT"** shall mean the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

1.7. **"CREDITORS"** shall mean all creditors of Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

1.8. **"DEBTOR"** shall mean John William O'Connor.

1.9. **"EFFECTIVE DATE"** shall be that date on which the order confirming the Plan becomes final.

1.10. **"LAW FIRM"** shall mean Lansing Roy, P.A. and any attorney or agent working on its behalf.

1.11. **"PETITION DATE"** shall mean July 23, 2013, the date on which the Chapter 11 case was filed.

1.12. **"PLAN"** shall mean this Plan of Reorganization in its present form or as it may be amended or supplemented.

1.13. **"SECURED CREDITORS"** shall mean all creditors who hold a lien, security interest, or other encumbrance properly perfected as required by law with respect to property owned by Debtor.

## ARTICLE 2
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**Summary.** The categories of Claims and interests listed below are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| | |
|---|---|
| Class 1: | Allowed Administrative Expenses. |
| Class 2: | Allowed Unsecured Claims. |
| Class 3: | Priority Unsecured Claim of the Internal Revenue Service. |
| Class 4: | Priority Secured Claim of the Internal Revenue Service. |
| Class 5: | Allowed Secured Claim 14-1 of Farm Credit of Florida, ACA; First Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656 |
| Class 6: | Allowed Secured Claim 13-1 of Farm Credit of Florida, ACA; Cross Collateralized Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656 |
| Class 7: | Allowed Secured Claim of CitiMortgage, Inc.; First Mortgage on 2532 Russell Road, Green Cove Springs, Florida 32043. |
| Class 8: | Allowed Secured Claim of Wells Fargo Home Mortgage; First Mortgage on 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205. |
| Class 9: | Secured Claim 6-1 of Compass Bank. |

2.1. **Class 1: Allowed Administrative Expenses.** All allowed administrative expenses for which application is filed prior to the Effective Date, and owing at the time of confirmation, will be paid as a condition precedent to the Confirmation Order, unless otherwise agreed by the holder of the administrative expense. The funds will come from Mr. O'Connor's salary from ODC and his operations of his entities. The U.S. Trustee fees are being paid on a current basis.

2.1.1. It is anticipated that the U.S. Trustee fee assessment for the calendar quarter at confirmation shall not exceed $325.00. The Debtor shall continue to pay fees assessed pursuant to 28 U.S.C. Section 1930(a)(6) until such time as this

Bankruptcy Court enters a final decree or administrative close of this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5).

2.1.2. It is anticipated that any legal fees and costs above the retainer already provided, if any, owed to the Firm at confirmation shall not exceed $10,000.00.[1] Debtor shall pay these fees, without interest, in monthly installments as agreed upon by the Debtor and the Firm over a period not to exceed twelve (12) months from the Effective Date.

2.1.3. This class of claims is not impaired under the Plan.

2.2. **Class 2: Allowed Unsecured Claims.** Allowed Unsecured Claims total approximately $18mm. Only those unsecured creditors listed in the below table shall be considered Allowed Unsecured Creditors and shall be entitled to distributions under the Plan.

(the remainder of this page is intentionally left blank)

---

[1] Such legal fees are subject to review by the Court for reasonableness.

| Unsecured Creditors | Claim # | Total Unsecured |
|---|---|---|
| Asset Accep. / Home Depot (Thd/Cbna) | 10-1 | $758.14 |
| Gdyr/Cbna | | $1,601.00 |
| Boone Land Management, LLC | | $3,275.00 |
| Cap One | 5-1 | $4,124.58 |
| Hsbc Bank | | $4,209.00 |
| Thomas Hardware, LLC | | $5,086.11 |
| Cap One | 4-1 | $6,133.46 |
| Cap One | 3-1 | $7,230.43 |
| IRS | 1-2 | $8,065.35 |
| WR Townsend Contracting | | $8,084.57 |
| Asset Acceptance LLC | 2-1 | $10,167.21 |
| Four A Construction | | $142,397.09 |
| Bank of the Ozarks | 18-1 | $281,743.70 |
| Eagle Harbor at Fleming Island Joint Venture | | $300,000.00 |
| Protective Life Insurance Co. | 12-1 | $468,750.00 |
| IberiaBank | 15-1 | $687,135.01 |
| IberiaBank | 16-1 | $1,360,846.06 |
| Stancorp Mortgage | 9-1 | $1,688,299.09 |
| Stancorp Mortgage | 7-1 | $3,373,933.76 |
| Shenandoah Life Ins. Co. | 17-1 | $4,154,698.49 |
| Stancorp Mortgage | 8-1 | $5,541,665.80 |

The Debtor proposes to pay this class of unsecured creditors $60,000.00 with no interest as follows:

2.2.1. Class 2 creditors shall receive their pro rata distribution under this class in twenty (20) equal quarterly payments.

2.2.2. These payments shall begin on the fifth (5th) day of the first (1st) calendar quarter following the Effective date, and continue on the fifth (5th) day of each calendar quarter thereafter until the twenty (20) payments are made. The cumulative sum of these quarterly payments shall be approximately $3,000.00.

2.2.3. Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

5

    2.2.4.  The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

    2.2.5.  This class of claims is impaired.

2.3.    **Class 3: Priority Unsecured Claim of the Internal Revenue Service.** The Internal Revenue Service ("IRS") has filed an unsecured priority claim (Claim No.: 1-2) totaling $6,195.47 stemming from 2012 income taxes. The Debtor proposes to pay this class of creditors the full amount of their allowed claims, according to the following terms:

    2.3.1.  The Debtor will pay the IRS $6,195.47 in equal monthly installments amortized at an interest rate of three percent (3.00%) per annum over a term of sixty (60) months. Payments to this class of creditors shall be approximately $111.32 per month.

    2.3.2.  The first payment to the IRS shall be the first (1st) day of the first (1st) month following the Effective Date and payments shall continue on the first (1st) day of each month thereafter.

    2.3.3.  Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

    2.3.4.  The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

    2.3.5.  This class of claims is impaired.

2.4.    **Class 4: Priority Secured Claim of the Internal Revenue Service.** The Internal Revenue Service ("IRS") has filed a secured priority claim (Claim No.: 1-2) totaling $75,592.28 stemming from interest and penalties from 2006 and 2009 income taxes. The Debtor proposes to pay this class of creditors the full amount of their allowed claims, according to the following terms:

2.4.1. The Debtor will pay the IRS $75,592.28 in equal monthly installments amortized at an interest rate of three percent (3.00%) per annum between the Effective Date and July 1, 2023. Anticipating an Effective Date in June of 2014, these payments will be over one-hundred and eight (108) months and the approximate amount of the payments shall be $799.54.

2.4.2. The first payment to the IRS shall be the first (1st) day of the first (1st) month following the Effective Date and payments shall continue on the first (1st) day of each month thereafter.

2.4.3. Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

2.4.4. The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

2.4.5. This class of claims is impaired.

2.5. **Class 5: Allowed Secured Claim 14-1 of Farm Credit of Florida, ACA; First Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656.** Farm Credit of Florida, ACA ("Farm Credit") has filed a secured claim on the Debtor's primary residence located at 5525 Christian Camp Road, Keystone Heights, Florida 32656 (the "Home") totaling $1,496,110.28 (Claim No.: 14-1) representing a first mortgage security interest in the Home. The Debtor intends to retain the Home and proposes to pay Farm Credit according to the following terms:

2.5.1. Farm Credit will retain a secured first mortgage position on the Home in the amount of $1,496.110.28 (the "$1.4mm Mortgage").

2.5.2. Debtor will continue making monthly principal and interest payments to Farm Credit in the amount and according to the terms outlined in their pre-petition loan documents and any modifications thereto.

2.5.3. The balloon payment for the $1.4mm Mortgage shall be extended to January 1, 2024, and may be further extended upon agreement between Farm Credit and the Debtor.

2.5.4. The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

2.5.5. All other terms of the note and mortgage not amended herein shall remain in full force and effect.

2.5.6. This class of claims is impaired.

2.6. **Class 6: Allowed Secured Claim 13-1 of Farm Credit of Florida, ACA; Cross Collateralized Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656**
Farm Credit filed secured claim 13-1 alleging a cross collateralized secured claim in the amount of $67,387.13 against the Home. The Debtor intends to retain the Home and proposes to pay Farm Credit according to the following terms:

2.6.1. Farm Credit will retain a secured cross collateralized mortgage position on the Home in the amount of $67,387.13 (the "$67K Mortgage").

2.6.2. Debtor will continue making monthly principal and interest payments to Farm Credit in the amount and according to the terms outlined in their pre-petition loan documents and any modifications thereto.

2.6.3. The balloon payment for the $67Kmm Mortgage shall be extended to January 1, 2024, and may be further extended upon agreement between Farm Credit and the Debtor.

2.6.4. The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

2.6.5. All other terms of the note and mortgage not amended herein shall remain in full force and effect.

2.6.6. This class of claims is impaired.

2.7. **Class 7: Allowed Secured Claim of CitiMortgage, Inc.; First Mortgage on 2532 Russell Road, Green Cove Springs, Florida 32043.** CitiMortgage, Inc. ("Citi") has filed secured claim 11-1 totaling $86,627.53 representing a first mortgage security interest on the Debtor's real property located at 2532 Russell Road, Green Cove Springs, Florida 32043 ("Russell Road"). The Debtor intends to retain Russell Road and proposes to pay Citi according to the following terms:

2.7.1. Debtor will pay Citi $86,627.53, as a secured mortgage on Russell Road amortized over thirty (30) years at a fixed interest rate of four and three quarters percent (4.75%) per annum. The monthly payment shall be approximately $451.89.

2.7.2. The first payment to Citi on Russell Road shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

2.7.3. The Debtor shall have a thirty (30) day grace period for all payments.

2.7.4. The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

2.7.5. All other terms of the note and mortgage not amended herein shall remain in full force and effect.

2.7.6. This class of claims is impaired.

2.8. **Class 8: Allowed Secured Claim of Wells Fargo Home Mortgage; First Mortgage on 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205.** The Debtor scheduled Wells Fargo Home Mortgage ("Wells") as holding a secured first mortgage claim on the real property of the Debtor located at 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205 ("St. Johns Ave."). The deadline for the filing of non-governmental claims in the Debtor's Case was November 26, 2013 (the "Claims Deadline"). Wells did not file a secured or unsecured claim in relation to the first mortgage on St. Johns Ave. before the Claims Deadline.

2.8.1. Debtor proposes to surrender St. Johns Ave. to Wells Bank in full satisfaction of its claim through a deed in lieu of foreclosure, consent to foreclosure or other such method as the Debtor and Wells may agree.

2.8.2. This class of claims is impaired.

2.9. **Class 9: Secured Claim 6-1 of Compass Bank.** Compass Bank ("Compass") filed secured claim 6-1 alleging a secured claim in the amount of $198,885.18 against real property of the Debtor located at 1462 River Lane, Green Cove Springs, Florida 32043 ("River Lane").

River Lane was sold at a foreclosure sale on June 20, 2013, see Clay County Foreclosure Case 2011-CA-001008. Debtor has filed an objection to Compass' claim 6-1 as Debtor is not the owner of the River Lane, and as such Compass' claim 6-1 is not entitled to treatment as a secured claim [Docket No.: 84]. Additionally, the Debtor has objected to Compass' claim 6-1 as an unsecured claim on the grounds that it is unliquidated and contingent. Compass shall not be entitled to any distribution under Class 8, and thus is not entitled to vote as a Class 8 creditor.

## ARTICLE 3
## MEANS FOR EXECUTION OF THE PLAN

3.1. In order to provide adequate means for the Plan's execution the Debtor proposes:

(a) Continuation and restructuring of the Debtor's financial affairs.

(b) Curing or waiving any defaults.

(c) Extension of a maturity date or change in an interest rate or outstanding securities.

(d) Retention by the Debtor of all estate property.

(e) All payments called for by the Plan irrespective of the class of creditor will have a thirty (30) day grace period unless otherwise provided for in the Plan

(f) The Debtor may prepay, in full or in part, any claim at any time before that claim's maturity date under the Plan without penalty.

(g) Any debt that arose before the date of confirmation and any debt within the parameters of 11 U.S.C. §1141(d)(1) will be discharged to the extent not provided for in the Plan or in the Order of Confirmation.

(h) Except as otherwise provided in the Plan or in the Order Confirming the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

(i) Except as provided in subsection 11 U.S.C. §1141(d)(2) and (d)(3) and as otherwise provided in the Plan or in the Order Confirming the Plan, after confirmation of the Plan and discharge of the Debtor, the property dealt with by the Plan is free and clear of all claims and interests of creditors.

3.2. All claims and causes of action in favor of the Debtor, including but not limited to the filing of objections to claims, are hereby reserved and retained to be prosecuted before and after confirmation and the Debtor expressly reserves any rights and powers that the Debtor may enjoy as the debtor-in-possession to be utilized after confirmation.

3.3.    (a) Pursuant to 11 U.S.C. §1141(a) all of the provisions of this Plan will bind all creditors of the Debtor, whether or not the claims or interests of such creditor is impaired under this Plan and whether or not such creditor has accepted this Plan.

(b) Confirmation of this Plan will vest all of the property of the estate in the Debtor.

(c) Except as otherwise provided in this Plan, after confirmation of this Plan and discharge of the Debtor, the property dealt with by this Plan shall be free and clear of all claims and interests of creditors, whether such claims are in the nature of consensual liens or involuntary liens, including judgment liens.

(d) Pursuant to 11 U.S.C. §1141(d)(5), completion of all payments under this Plan shall discharge the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in §502(g), §502(h), or §502(i) of this Title whether or not a proof of the claim based on such debt is filed or deemed filed under §501 of this Title, such claim is allowed under §502 of this Title, or the holder of such claim has accepted the Plan.

(e) The Court may, however, upon motion and hearing, at its discretion administratively close this case without entry of a discharge until all payments under the Plan have been made. Upon completion of all payments under the Plan, or as otherwise available to the Debtors under Section 1141(d)(5)(B) of the Bankruptcy Code, the Debtor intends to file a motion to reopen the case for the limited purpose of obtaining a discharge.

(f) The Debtor is not entitled to a discharge in this case until completion of all payments under the Plan. To the extent that the case is dismissed or converted to one under Chapter 7, then the Creditor's liens shall be restored to pre-petition status and amount, with credit for any post-petition payments received (as applied under the pre-petition contractual status).

## ARTICLE 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will have been deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed on or before the date of the order confirming the Plan.

(signature page follows)

Dated this 17th day of January 2014

_____
John/William O'Connor

**LANSING ROY, P.A.**

/s/ William B. McDaniel
**Christopher R. DeMetros, Esquire**
Florida Dar No. 0863467
**Kevin B. Paysinger, Esquire**
Florida Bar No. 0056742
**William B. McDaniel, Esquire**
Florida Bar No. 0084469
Attorney for Debtors
1710 Shadowood Lane, Suite 210
Jacksonville, FL 32207
(904) 391-0030