**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE: )
)
**JOHN WILLIAM O'CONNOR** ) **CASE NO. 3:13-04514-JAF**
) **CHAPTER 11**
)
Debtor )

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION

On July 23, 2013 (the "Petition Date"), John William O'Connor ("the "Debtor") filed a voluntary petition for Reorganization pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). This case was filed in the Middle District of Florida, Jacksonville Division. Along with this Disclosure Statement, the Debtor has filed a Plan of Reorganization (the "Plan").

### I. Summary of Information Contained in the Disclosure Statement

#### A. Introduction

The Debtor, as Debtor-in-Possession, in connection with the Debtor's Plan of Reorganization dated of even date herewith, provides this Disclosure Statement pursuant to 11 U.S.C. § 1125 in order to provide adequate information to enable holders of Claims that are impaired under the Plan to make an informed decision in exercising their right to vote for acceptance or rejection of the Plan.

The Plan provides for payment of allowed administrative, priority, secured, and unsecured claims. Debtor is an individual who resides at 5525 Christian Camp Road, Keystone Heights, Florida 32656. Debtor holds ownership interests in approximately twenty-five (25) separate real estate holding/development companies comprised of partnerships, limited liability corporations and corporations. Additionally, the Debtor directly oversees the management and

1

leasing of the commercial real estate held by the entities in which he retains an interest. Debtor will make the payments under the Plan with the revenue generated by his ownership interest in and income derived from his related entities and through his management of certain commercial real estate owned by those entities. A copy of the Plan is attached as Exhibit A and is discussed in greater detail in this Disclosure Statement in the section entitled "The Plan of Reorganization."

ALL STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT ARE INCLUDED SOLELY FOR THE PURPOSES OF SOLICITING VOTES WITH RESPECT TO THE PLAN. WITH RESPECT TO DISPUTES, CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED ACTIONS BETWEEN THE DEBTOR AND THIRD PARTIES, NOTHING CONTAINED IN THE DISCLOSURE STATEMENT SHALL BE CONSTRUED AS AN ADMISSION, WAIVER OR STIPULATION, BUT RATHER SHALL BE TREATED AS STATEMENTS MADE AND INFORMATION PROVIDED IN SETTLEMENT NEGOTIATIONS.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PLAN INCONSISTENT WITH THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE DEBTOR, HIS FUTURE BUSINESS OPERATIONS, OR THE VALUE OF HIS ASSETS HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION

CONTAINED HEREIN, SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM IN VOTING ON THE PLAN.

### B. Who May Vote on the Plan

Under the Bankruptcy Code, impaired classes of claims or equity interests are entitled to vote to accept or reject the Plan. However, where claims or interests in impaired classes, although impaired, will retain no property and receive no distribution under a plan, they are deemed to have rejected the plan and are therefore not entitled to vote. Only holders of claims or interests in impaired classes which are allowed claims or interests, or claims which are estimated and allowed for voting purposes by order of the Bankruptcy Court, as of the voting deadline are entitled to vote on the plan.

For purposes of this Disclosure Statement, holders of Claims in Classes two (2), three (3), four (4), five (5), six (6), seven (7) and eight (8) are impaired and will receive distribution under the Plan and are thus entitled to vote on the Plan.

### C. Voting Instructions

As a holder of a Claim, your vote on the Plan is important. Another copy of the Plan and a ballot to be used for voting to accept or reject the Plan will be provided after this Disclosure Statement is approved by the Court. After carefully reviewing the Plan and this Disclosure Statement, including all attached exhibits, please indicate your acceptance or rejection of the Plan on the ballot and return it in the manner described on the ballot.

BALLOTS MUST BE ACTUALLY RECEIVED BY THE CLERK OF THE COURT ON OR BEFORE 4:00 P.M., EASTERN STANDARD TIME, BY THE DATE INDICATED ON SUCH BALLOT. ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT WILLIAM B. MCDANIEL OF LANSING ROY, P.A., COUNSEL FOR THE DEBTOR, AT (904) 391-0030.

### D. Acceptance or Rejection of the Plan

Under the Bankruptcy Code, a class of claims is deemed to have accepted a plan if the plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of such class who vote on the plan.

If the Plan is not accepted by all the classes of impaired claims and equity interests, the Plan may still be confirmed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129(b) if the Plan has been accepted by at least one impaired class of claims, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly," and is "fair and equitable" with respect to each non-accepting impaired class of claims or interests. If an impaired class of allowed claims or interests rejects the Plan, the Debtor may ask the Bankruptcy Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each non-accepting impaired class of claims or interests.

### E. Confirmation Hearing

Pursuant to 11 U.S.C. § 1128, the Bankruptcy Court will schedule a confirmation hearing at the United States Bankruptcy Court, Middle District of Florida, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202. The confirmation hearing will be adjourned from time to time by the Bankruptcy Court by announcement at open court at the confirmation hearing without further notice.

### F.  Objections to Confirmation

Any objection to confirmation of the Plan must be in writing, must comply with the Bankruptcy Rules, state the name of the objecting party, state the nature and amount of any claim or equity interest asserted by such objecting party against the Debtor's estate, and must be filed and served as required by the Bankruptcy Court.

## II.  Description of Debtors and Events Causing the Chapter 11 Filing

### A.  Introduction

In 1981, John W. O'Connor formed O'Connor Development Corporation ("ODC") and began developing commercial real estate in northeast Florida.  ODC was incorporated to oversee and manage multiple projects consisting of commercial property acquisitions and developments. Due to lending guidelines, lenders require separate legal entities (whether partnerships, LLCs or corporations) be formed for each specific development project to be lent to.  Mr. O'Connor and ODC would form these entities, each retaining an ownership interest, while the specific entity would purchase and develop the property with lender financing.  In the majority of cases, both Mr. O'Connor and ODC would guarantee the financing of the entities.

As Mr. O'Connor developed, sold and managed commercial real estate he used the revenue, profits and collateral generated to both invest in new developments and help fund entities that were operating at deficiencies.  Since 1981, Mr. O'Connor and ODC have overseen the purchase, development, sale and management of over fifty (50) commercial properties in the greater Jacksonville area.

### B.  Reasons for Filing Bankruptcy

It is no secret that the current recession began to slowly manifest itself in the residential sector in the form of declining residential property values and slowed demand for new residential

construction in 2007.  By 2008 the recession was in full swing in regards to residential property values, construction, lending and employment, and its effects began to trickle down to commercial real estate.

By the end of 2008, Mr. O'Connor began experiencing the decline in demand for new commercial development.  Additionally, the values of the commercial real estate held by the entities owned by Mr. O'Connor's decreased significantly thereby eliminating any equity that Mr. O'Connor could call on to help fund continued operations.

As the value of commercial real estate continued to plummet, Mr. O'Connor's management of commercial properties also began to suffer as a direct result of the recession curbing retail spending and commercial lenders halting lending for new and established businesses.  Although the Debtor had experienced renter's markets over his thirty (30) year history as a developer, never had he experienced such a perfect storm of plummeting property values and vacancies flooding the market in such a short period of time.  The combination of the recession decreasing property values and increased commercial leasing competition resulted in vacancies and necessitated rent reductions in the majority of Mr. O'Connor's entities which further reduced the global revenue available for operations.

During this time, the Mr. O'Connor actively worked with his lenders.  Between 2007 and 2013 Mr. O'Connor managed his affairs with lenders through restructuring and forbearances of loans, the sale of properties, surrender and turnover of certain properties, and even management of certain properties after turnover at the lender's request.  Mr. O'Connor continued to work with lenders even as guarantee judgments were entered against him in 2011 and 2012.

Unfortunately, by 2013, it became apparent that the economy was not going to rebound at the level or in the timeframe needed for Mr. O'Connor and ODC to service their $36mm in guarantee liability.

On July 23, 2013 (the "Petition Date") Mr. O'Connor filed a voluntary petition seeking reorganization under Chapter 11 of the Bankruptcy Code. Also on the Petition Date, ODC and Shoppes of Eagle Harbor, Ltd. (an entity in which Mr. O'Connor retains an 89.1% interest) also filed separate voluntary petitions under Chapter 11 of the Bankruptcy Code (Case Nos.: 13-bk-4513-JAF and 13-bk-4512-JAF, respectively). Mr. O'Connor filed his Chapter 11 petition in order to restructure his obligations, retain his Property and continue operations going forward.

### C.  Actions taken since filing the Chapter 11

#### 1.  Employment of Professionals

The Debtor decided to hire William B. McDaniel with the Bankruptcy Law Firm of Lansing J. Roy, P.A.[1] (the "Firm") as his attorney in the Chapter 11 case. On July 30, 2013, the Debtor filed its application to employ the Firm [Docket No.: 14]. The Court issued its Order Approving Application to employ the Firm on September 6, 2013 [Docket No.: 31]. The Firm's compensation will be subject to the Court's review for reasonableness under 11 U.S.C. § 330.

The Debtor also decided to hire Stephen DuVal, CPA with DuVal Fields CPA Group, P.A. (the "Accountant") as the Debtor's accountant in the Chapter 11 case. On August 28, 2013, the Debtor filed his Application to Employ Accountant [Docket No.: 26]. The Court issued its Order Granting Application to Employ Accountant on October 2, 2013 [Docket No.: 37] (the "CPA Order"). The Accountant did hold pre-petition claim against the Debtor, which was

---

[1] On November 1, 2013 the Bankruptcy Law Firm of Lansing J. Roy, P.A. changed its name to Lansing Roy, P.A. The term "Firm" as used in this Disclosure Statement shall refer both the Bankruptcy Law Firm of Lansing J. Roy, P.A. and Lansing Roy, P.A. wherever appropriate.

voluntarily waived and documented in the CPA Order. The Accountant's compensation will be subject to the Court's review for reasonableness under 11 U.S.C. § 330.

2. **Insider Relationships**

O'Connor Development Corporation. John W. O'Connor is ODC's acting President and one-hundred percent (100%) shareholder. On the Petition Date, ODC filed its own independent voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division which was assigned Case No.: 3:13-bk-4513-JAF.

On October 29, 2013 the Court granted Mr. O'Connor's application for employment on a final basis [ODC Docket No.: 45] and Mr. O'Connor has been receiving the salary and benefits outlined therein

Shoppes of Eagle Harbor, Ltd. Shoppes of Eagle Harbor, Ltd. ("SOEH") is a partnership in which the Debtor retains a eighty-nine and one tenths percent (89.1%) interest. On the Petition Date, SOEH filed its own independent voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division which was assigned Case No.: 3:13-bk-4512-JAF.

The Debtor receives no salary or benefits from SOEH. SOEH shall receive no distributions under Debtor's Plan.

Island Walk, LLC Account Receivable. Debtor retains a ninety-five percent (95%) membership interest in Island Walk, LLC ("Island Walk"). Debtor's Schedule B [Docket No.: 20] lists an account receivable in the amount of $476,285.00 owed to the Debtor from Island Walk. Island Walk is insolvent with no assets and no ability to pay the amount owed to the

Debtor.    As more fully discussed in the liquidation analysis included in Section E below the Debtor contends that this account receivable is uncollectable.

Florida CMS, LLC Account Receivable.    Debtor retained a fifty percent (50%) membership interest in Florida CMS, LLC ("CMS") prior to its closing in 2013.    Debtor's Schedule B [Docket No.: 20] lists an account receivable in the amount of $386,989.00 owed to the Debtor from CMS.    CMS's only asset was commercial real estate which was sold at a foreclosure sale on September 10, 2013, see Clay County Foreclosure case 2012-CA-000847. CMS is closed and insolvent with no assets or ability to generate revenue and has no ability to pay the amount owed to the Debtor.    The Debtor contends that this account receivable is uncollectable.

Unsecured Claim of O'Connor Development Corporation.    Debtor has listed ODC in its Schedule F [Docket No.: 20] as holding an unsecured claim against the Debtor in the amount of $1,467,007.52 for monies loaned to the Debtor.    Due to ODC's relation to the Debtor as an insiders/related entity, ODC shall not be entitled to an unsecured claim against the Debtor or the Debtor's estate and no distributions shall be made to ODC under the Plan.

**III. The Plan of Reorganization**

**A. Introduction**

The following is a summary of Debtor's Plan of Reorganization.    This summary highlights the substantive provisions of the Plan but is not, nor is it intended to be, a complete description of the Plan.    A complete copy of the Plan is attached as Exhibit A.    Statements regarding projected amounts of claims or distributions are estimated by the Debtor based on current information and are not a representation of the accuracy of these amounts.    Any conflict

between the following summary and the Plan itself shall be resolved by reference to the terms and provisions of the Plan, which shall govern.

### B. Classifications of Claims.

The Plan establishes nine (9) classes of Claims:

**Class 1: Allowed Administrative Expenses.** All allowed administrative expenses for which application is filed prior to the Effective Date, and owing at the time of confirmation, will be paid as a condition precedent to the Confirmation Order, unless otherwise agreed by the holder of the administrative expense. The funds will come from Mr. O'Connor's salary from ODC and his operations of his entities. The U.S. Trustee fees are being paid on a current basis.

It is anticipated that the U.S. Trustee fee assessment for the calendar quarter at confirmation shall not exceed $325.00. The Debtor shall continue to pay fees assessed pursuant to 28 U.S.C. Section 1930(a)(6) until such time as this Bankruptcy Court enters a final decree or administrative close of this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5).

It is anticipated that any legal fees and costs above the retainer already provided, if any, owed to the Firm at confirmation shall not exceed $10,000.00.[2] Debtor shall pay these fees, without interest, in monthly installments as agreed upon by the Debtor and the Firm over a period not to exceed twelve (12) months from the Effective Date.

This class of claims is not impaired under the Plan.

**Class 2: Allowed Unsecured Claims.** Allowed Unsecured Claims total approximately $18mm. As more fully discussed in Section E below, if the Debtor's assets were liquidated, no assets would be available for distribution to this class of creditors under a Chapter 7 administration.

---

[2] Such legal fees are subject to review by the Court for reasonableness.

Only those unsecured creditors listed in the below table shall be considered Allowed Unsecured Creditors and shall be entitled to distributions under the Plan. Insider/related entities scheduled as holding unsecured claims against the Debtor shall not be entitled to distributions. Additionally, the Debtor scheduled the Accountant as holding a pre-petition claim against the Debtor in an unknown amount. The Accountant waived this claim as part of his continued employment by the Debtor as evidenced in the CPA Order. The Accountant will not be entitled to any distribution from the Debtor under the Plan.

Below is a list of all Allowed Unsecured Claims which are entitled to a distribution under this class:

| Unsecured Creditors | Claim # | Total Unsecured |
|---|---|---|
| Asset Accep. / Home Depot (Thd/Cbna) | 10-1 | $758.14 |
| Gdyr/Cbna | | $1,601.00 |
| Boone Land Management, LLC | | $3,275.00 |
| Cap One | 5-1 | $4,124.58 |
| Hsbc Bank | | $4,209.00 |
| Thomas Hardware, LLC | | $5,086.11 |
| Cap One | 4-1 | $6,133.46 |
| Cap One | 3-1 | $7,230.43 |
| IRS | 1-2 | $8,065.35 |
| WR Townsend Contracting | | $8,084.57 |
| Asset Acceptance LLC | 2-1 | $10,167.21 |
| Four A Construction | | $142,397.09 |
| Bank of the Ozarks | 18-1 | $281,743.70 |
| Eagle Harbor at Fleming Island Joint Venture | | $300,000.00 |
| Protective Life Insurance Co. | 12-1 | $468,750.00 |
| IberiaBank | 15-1 | $687,135.01 |
| IberiaBank | 16-1 | $1,360,846.06 |
| Stancorp Mortgage | 9-1 | $1,688,299.09 |
| Stancorp Mortgage | 7-1 | $3,373,933.76 |
| Shenandoah Life Ins. Co. | 17-1 | $4,154,698.49 |
| Stancorp Mortgage | 8-1 | $5,541,665.80 |

The Debtor proposes to pay this class of unsecured creditors $60,000.00 with no interest as follows:

1. Class 2 creditors shall receive their pro rata distribution under this class in twenty (20) equal quarterly payments.

2. These payments shall begin on the fifth (5th) day of the first (1st) calendar quarter following the Effective date, and continue on the fifth (5th) day of each calendar quarter thereafter until the twenty (20) payments are made. The cumulative sum of these quarterly payments shall be approximately $3,000.00.

3. Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

4. The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

   This class of claims is impaired.

**Class 3: Priority Unsecured Claim of the Internal Revenue Service.** The Internal Revenue Service ("IRS") has filed an unsecured priority claim (Claim No.: 1-2) totaling $6,195.47 stemming from 2012 income taxes. The Debtor proposes to pay this class of creditors the full amount of their allowed claims, according to the following terms:

1. The Debtor will pay the IRS $6,195.47 in equal monthly installments amortized at an interest rate of three percent (3.00%) per annum over a term of sixty (60) months. Payments to this class of creditors shall be approximately $111.32 per month.

2. The first payment to the IRS shall be the first (1st) day of the first (1st) month following the Effective Date and payments shall continue on the first (1st) day of each month thereafter.

3. Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

4. The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

This class of claims is impaired.

**Class 4: Priority Secured Claim of the Internal Revenue Service.** The Internal Revenue Service ("IRS") has filed a secured priority claim (Claim No.: 1-2) totaling $75,592.28 stemming from interest and penalties from 2006 and 2009 income taxes. The Debtor proposes to pay this class of creditors the full amount of their allowed claims, according to the following terms:

1. The Debtor will pay the IRS $75,592.28 in equal monthly installments amortized at an interest rate of three percent (3.00%) per annum between the Effective Date and July 1, 2023. Anticipating an Effective Date in June of 2014, these payments will be over one-hundred and eight (108) months and the approximate amount of the payments shall be $799.54.

2. The first payment to the IRS shall be the first (1st) day of the first (1st) month following the Effective Date and payments shall continue on the first (1st) day of each month thereafter.

3. Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

4. The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

This class of claims is impaired.

**Class 5: Allowed Secured Claim 14-1 of Farm Credit of Florida, ACA; First Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656.** Farm Credit of Florida, ACA ("Farm Credit") has filed a secured claim on the Debtor's primary residence located at 5525 Christian Camp Road, Keystone Heights, Florida 32656 (the "Home") totaling $1,496,110.28 (Claim No.: 14-1) representing a first mortgage security interest in the Home. The Debtor intends to retain the Home and proposes to pay Farm Credit according to the following terms:

1. Farm Credit will retain a secured first mortgage position on the Home in the amount of $1,496.110.28 (the "$1.4mm Mortgage").

2. Debtor will continue making monthly principal and interest payments to Farm Credit in the amount and according to the terms outlined in their pre-petition loan documents and any modifications thereto.

3. The balloon payment for the $1.4mm Mortgage shall be extended to January 1, 2024, and may be further extended upon agreement between Farm Credit and the Debtor.

4. The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

5. All other terms of the note and mortgage not amended herein shall remain in full force and effect.

This class of claims is impaired.

**Class 6: Allowed Secured Claim 13-1 of Farm Credit of Florida, ACA; Cross Collateralized Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656**

Farm Credit filed secured claim 13-1 alleging a cross collateralized secured claim in the amount of $67,387.13 against the Home.  The Debtor intends to retain the Home and proposes to pay Farm Credit according to the following terms:

1. Farm Credit will retain a secured cross collateralized mortgage position on the Home in the amount of $67,387.13 (the "$67K Mortgage").

2. Debtor will continue making monthly principal and interest payments to Farm Credit in the amount and according to the terms outlined in their pre-petition loan documents and any modifications thereto.

3. The balloon payment for the $67Kmm Mortgage shall be extended to January 1, 2024, and may be further extended upon agreement between Farm Credit and the Debtor.

4. The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

5. All other terms of the note and mortgage not amended herein shall remain in full force and effect.

This class of claims is impaired.

**Class 7:  Allowed Secured Claim of CitiMortgage, Inc.; First Mortgage on 2532 Russell Road, Green Cove Springs, Florida 32043.**  CitiMortgage, Inc. ("Citi") has filed secured claim 11-1 totaling $86,627.53 representing a first mortgage security interest on the Debtor's real property located at 2532 Russell Road, Green Cove Springs, Florida 32043 ("Russell Road"). The Debtor intends to retain Russell Road and proposes to pay Citi according to the following terms:

1. Debtor will pay Citi $86,627.53, as a secured mortgage on Russell Road amortized over thirty (30) years at a fixed interest rate of four and three quarters percent (4.75%) per annum.  The monthly payment shall be approximately $451.89.

2. The first payment to Citi on Russell Road shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

3. The Debtor shall have a thirty (30) day grace period for all payments.

4. The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

5.  All other terms of the note and mortgage not amended herein shall remain in full force and effect.

This class of claims is impaired.

**Class 8:  Allowed Secured Claim of Wells Fargo Home Mortgage; First Mortgage on 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205.**  The Debtor scheduled Wells Fargo Home Mortgage ("Wells") as holding a secured first mortgage claim on the real property of the Debtor located at 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205 ("St. Johns Ave.").

The deadline for the filing of non-governmental claims in the Debtor's Case was November 26, 2013 (the "Claims Deadline"). Wells did not file a secured or unsecured claim in relation to the first mortgage on St. Johns Ave. before the Claims Deadline.

Debtor proposes to surrender St. Johns Ave. to Wells Bank in full satisfaction of its claim through a deed in lieu of foreclosure, consent to foreclosure or other such method as the Debtor and Wells may agree.

This class of claims is impaired.

**Class 9:  Secured Claim 6-1 of Compass Bank.**  Compass Bank ("Compass") filed secured claim 6-1 alleging a secured claim in the amount of $198,885.18 against real property of the Debtor located at 1462 River Lane, Green Cove Springs, Florida 32043 ("River Lane").

River Lane was sold at a foreclosure sale on June 20, 2013, see Clay County Foreclosure Case 2011-CA-001008. Debtor has filed an objection to Compass' claim 6-1 as Debtor is not the owner of the River Lane, and as such Compass' claim 6-1 is not entitled to treatment as a secured claim [Docket No.: 84]. Additionally, the Debtor has objected to Compass' claim 6-1 as

an unsecured claim on the grounds that it is unliquidated and contingent. Compass shall not be entitled to any distribution under Class 8, and thus is not entitled to vote as a Class 8 creditor.

### C. Effective Date of the Plan.

The Plan provides that the Effective Date shall be the date on which the order confirming the Plan becomes final, which is fourteen (14) days after entry of the order of confirmation. Distributions will begin thirty (30) days after the Effective Date, unless otherwise provided for in the Plan.

### D. Executory Contracts and Unexpired Leases.

The Debtor will have been deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed on or before the date of the order confirming the Plan.

### E. Liquidation Analysis

Attached as Exhibit B is a list of all of the Debtor's assets as of the Petition Date with applicable restrictions on those assets.

Factoring in the estimated administrative costs associated with a liquidation under Chapter 7 and the secured and unsecured priority claims of the IRS, no funds or assets would be available for distribution to Allowed Unsecured Creditors should the Debtor's case be converted and his assets liquidated.

The Plan provides for the unsecured creditors to be paid a total of $60,000.00, from the income generated from the Debtor's continued operation. Therefore, Allowed Unsecured Creditors stand to receive a much larger sum through the Plan than they would should the Debtor's assets be liquidated.

(the remainder of this page is intentionally left blank)

17

**F. Means of Execution of the Plan and Feasibility.**

The Plan provides for payments under the Plan to be funded from the revenue generated from the Debtor's continued operations and management of its subsidiaries. Additional monthly payment obligations under the Plan are estimated at $2,362.75

Averaging the Debtor's monthly operating reports which have been completed as of the date of this Disclosure Statement, the Debtor has average monthly income of approximately $1,519.31 to cover monthly obligations under the Plan. In addition to Debtor's income, Debtor's non-filing spouse earns approximately $3,000.00 per month which is available to assist Debtor in covering both their household expenses and obligations under this Plan.

Additionally, the Debtor will begin leasing the property on Russell Road to help supplement his income and make payments under the Plan. The Debtor anticipates leasing Russell Road for $1,000.00 per month, which will net approximately $550.00 in additional monthly income after the secured obligations on Russell Road are satisfied.

Based upon the above, Debtor asserts the Plan is feasible as proposed and not likely to be followed by further reorganization.

**G. Post-Confirmation Management**

As the Debtor is an individual, the Debtor shall continue to have exclusive control of his affairs post-confirmation.

**H. Claims Resolution and Distributions.**

In order for the holder of a Claim to receive the treatment offered to the class in which it is classified, the Claim must be allowed. An allowed claim is defined in the Plan. All Claims scheduled by the Debtor as disputed, contingent, unliquidated or unknown as to amount, and for which no proof of claim was filed by the bar date as set by the Bankruptcy Court, will be

extinguished. Furthermore, any proof of claim filed after the bar date will be extinguished under the terms of the Plan unless otherwise provided by order of the Court. The Debtor or any other party in interest desiring to file objections to proofs of claim may file objections to the allowance of the Claims to the extent they deem such objection is warranted.

Claims listed in the schedules filed by the Debtor not identified as either disputed, contingent, unliquidated or unknown and for which no proof of claims have been filed on or before the bar date, will be treated as allowed claims unless the scheduled amounts are properly amended or objections are filed to the amounts set forth in the schedules. Proofs of claims for which no objection is filed by the deadline in the Plan or such other date set by order of the Court will, in the Debtor's discretion, be deemed allowed claims in the amounts set forth in proofs of claim filed with the Court.

All distributions shall be made in cash, by check drawn on a domestic bank or by wire transfer from a domestic bank at the option of the Debtor.

**I.  Miscellaneous.**

Prior to the Confirmation Date, the Debtor may, with the approval of the Court and without notice to or consent of any holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent as may be necessary to expedite the execution of the Plan. The Plan may be altered or amended after the Confirmation Date and before the distribution date only as provided in 11 U.S.C. § 1127.

Debtor reserves the right to object to claims post-confirmation.

From the Confirmation Date to the Effective Date, the Bankruptcy Court shall retain full jurisdiction of the Chapter 11 case notwithstanding that confirmation of the Plan has occurred by entry of the Confirmation Order.

## IV. Alternatives to Confirmation of the Plan.

If the Plan is not confirmed, the following alternatives could occur:

**A.** <u>Conversion to Chapter 7</u>.   The Debtor's Chapter 11 bankruptcy case may be converted to Chapter 7.  Debtor's operations would cease, and a trustee would then be appointed by the Bankruptcy Court to liquidate the Debtor's assets for distribution to creditors in accordance with priorities established by the Bankruptcy Code.  However, the Debtor believes that creditors will receive far more under the Plan than if the case was converted to Chapter 7 and the Debtor's estate liquidated.

**B.** <u>Dismissal</u>.   The Debtor's Chapter 11 bankruptcy case would be dismissed thus restoring the status quo prior to the Petition Date.  However, the Debtor will not have sufficient funds to service its debt outside the Chapter 11.

## V. Conclusion

For the reasons set forth above, the Debtor urges all holders of claims which are or may be impaired under the Plan to vote to accept the Plan and to demonstrate this acceptance by timely returning their ballots according to the instructions received with the ballot.   In the Debtor's opinion, the Plan is preferable to all other alternatives in that it provides the best available opportunity to maximize the potential for the largest possible payment of all claims against the Debtor.

(signature page follows)

Dated this 17th day of January, 2014

_____
John William O'Connor

**LANSING ROY, P.A.**

/s/ William B. McDaniel
_____
**Christopher R. DeMetros, Esquire**
Florida Dar No. 0863467
**Kevin B. Paysinger, Esquire**
Florida Bar No. 0056742
**William B. McDaniel, Esquire**
Florida Bar No. 0084469
Attorney for Debtors
1710 Shadowood Lane, Suite 210
Jacksonville, FL 32207
(904) 391-0030

# EXHIBIT "A"

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:                  )
                            )
**JOHN WILLIAM O'CONNOR**    )     **CASE NO. 3:13-04514-JAF**
                            )     **CHAPTER 11**
                            )
             **Debtor**     )

## DEBTOR'S PLAN OF REORGANIZATION

John William O'Connor, as Debtor and Debtor-in-Possession, proposes the following Plan of Reorganization.

## ARTICLE 1
## DEFINITIONS

1.1.    **"ADMINISTRATIVE EXPENSE"** shall mean any cost or expense of administration of the Chapter 11 case allowed under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

1.2.    **"ALLOWED"** shall mean any such Claim, proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on their schedules as liquidated in amount and not disputed, contingent or unknown as to value, and, in either case, a Claim as to which no objection to the allowance thereof has been filed on or before the Confirmation Date or such other applicable period of limitation fixed by the Plan. Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on such Claim for the period from and after the Petition Date.

1.3.    **"BANKRUPTCY CODE"** shall mean Title 11 of the United States Code.

1.4.    **"CLAIM"** shall mean a duly listed or timely filed claim which is Allowed and ordered paid by the Court.

1.5.    **"CONFIRMATION DATE"** means the date on which the Court shall enter the Confirmation Order.

1.6.    **"COURT"** shall mean the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

1.7.    **"CREDITORS"** shall mean all creditors of Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

1.8.    **"DEBTOR"** shall mean John William O'Connor.

1.9.    **"EFFECTIVE DATE"** shall be that date on which the order confirming the Plan becomes final.

1.10.    **"LAW FIRM"** shall mean Lansing Roy, P.A. and any attorney or agent working on its behalf.

1.11.    **"PETITION DATE"** shall mean July 23, 2013, the date on which the Chapter 11 case was filed.

1.12.    **"PLAN"** shall mean this Plan of Reorganization in its present form or as it may be amended or supplemented.

1.13.    **"SECURED CREDITORS"** shall mean all creditors who hold a lien, security interest, or other encumbrance properly perfected as required by law with respect to property owned by Debtor.

2

## ARTICLE 2
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**Summary.** The categories of Claims and interests listed below are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

Class 1:   Allowed Administrative Expenses.

Class 2:   Allowed Unsecured Claims.

Class 3:   Priority Unsecured Claim of the Internal Revenue Service.

Class 4:   Priority Secured Claim of the Internal Revenue Service.

Class 5:   Allowed Secured Claim 14-1 of Farm Credit of Florida, ACA; First Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656

Class 6:   Allowed Secured Claim 13-1 of Farm Credit of Florida, ACA; Cross Collateralized Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656

Class 7:   Allowed Secured Claim of CitiMortgage, Inc.; First Mortgage on 2532 Russell Road, Green Cove Springs, Florida 32043.

Class 8:   Allowed Secured Claim of Wells Fargo Home Mortgage; First Mortgage on 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205.

Class 9:   Secured Claim 6-1 of Compass Bank.

2.1.   **Class 1: Allowed Administrative Expenses.**  All allowed administrative expenses for which application is filed prior to the Effective Date, and owing at the time of confirmation, will be paid as a condition precedent to the Confirmation Order, unless otherwise agreed by the holder of the administrative expense. The funds will come from Mr. O'Connor's salary from ODC and his operations of his entities. The U.S. Trustee fees are being paid on a current basis.

2.1.1.   It is anticipated that the U.S. Trustee fee assessment for the calendar quarter at confirmation shall not exceed $325.00. The Debtor shall continue to pay fees assessed pursuant to 28 U.S.C. Section 1930(a)(6) until such time as this

3

Bankruptcy Court enters a final decree or administrative close of this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5).

2.1.2.  It is anticipated that any legal fees and costs above the retainer already provided, if any, owed to the Firm at confirmation shall not exceed $10,000.00.[1]  Debtor shall pay these fees, without interest, in monthly installments as agreed upon by the Debtor and the Firm over a period not to exceed twelve (12) months from the Effective Date.

2.1.3.  This class of claims is not impaired under the Plan.

2.2.    **Class 2:  Allowed Unsecured Claims.**  Allowed Unsecured Claims total approximately $18mm.  Only those unsecured creditors listed in the below table shall be considered Allowed Unsecured Creditors and shall be entitled to distributions under the Plan.

(the remainder of this page is intentionally left blank)

---

[1] Such legal fees are subject to review by the Court for reasonableness.

| Unsecured Creditors | Claim # | Total Unsecured |
|---|---|---|
| Asset Accep. / Home Depot (Thd/Cbna) | 10-1 | $758.14 |
| Gdyr/Cbna | | $1,601.00 |
| Boone Land Management, LLC | | $3,275.00 |
| Cap One | 5-1 | $4,124.58 |
| Hsbc Bank | | $4,209.00 |
| Thomas Hardware, LLC | | $5,086.11 |
| Cap One | 4-1 | $6,133.46 |
| Cap One | 3-1 | $7,230.43 |
| IRS | 1-2 | $8,065.35 |
| WR Townsend Contracting | | $8,084.57 |
| Asset Acceptance LLC | 2-1 | $10,167.21 |
| Four A Construction | | $142,397.09 |
| Bank of the Ozarks | 18-1 | $281,743.70 |
| Eagle Harbor at Fleming Island Joint Venture | | $300,000.00 |
| Protective Life Insurance Co. | 12-1 | $468,750.00 |
| IberiaBank | 15-1 | $687,135.01 |
| IberiaBank | 16-1 | $1,360,846.06 |
| Stancorp Mortgage | 9-1 | $1,688,299.09 |
| Stancorp Mortgage | 7-1 | $3,373,933.76 |
| Shenandoah Life Ins. Co. | 17-1 | $4,154,698.49 |
| Stancorp Mortgage | 8-1 | $5,541,665.80 |

The Debtor proposes to pay this class of unsecured creditors $60,000.00 with no interest as follows:

2.2.1.  Class 2 creditors shall receive their pro rata distribution under this class in twenty (20) equal quarterly payments.

2.2.2.  These payments shall begin on the fifth (5th) day of the first (1st) calendar quarter following the Effective date, and continue on the fifth (5th) day of each calendar quarter thereafter until the twenty (20) payments are made.  The cumulative sum of these quarterly payments shall be approximately $3,000.00.

2.2.3.  Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

5

2.2.4.   The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

2.2.5.   This class of claims is impaired.

2.3.   **Class 3: Priority Unsecured Claim of the Internal Revenue Service.** The Internal Revenue Service ("IRS") has filed an unsecured priority claim (Claim No.: 1-2) totaling $6,195.47 stemming from 2012 income taxes. The Debtor proposes to pay this class of creditors the full amount of their allowed claims, according to the following terms:

2.3.1.   The Debtor will pay the IRS $6,195.47 in equal monthly installments amortized at an interest rate of three percent (3.00%) per annum over a term of sixty (60) months. Payments to this class of creditors shall be approximately $111.32 per month.

2.3.2.   The first payment to the IRS shall be the first (1st) day of the first (1st) month following the Effective Date and payments shall continue on the first (1st) day of each month thereafter.

2.3.3.   Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

2.3.4.   The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

2.3.5.   This class of claims is impaired.

2.4.   **Class 4: Priority Secured Claim of the Internal Revenue Service.** The Internal Revenue Service ("IRS") has filed a secured priority claim (Claim No.: 1-2) totaling $75,592.28 stemming from interest and penalties from 2006 and 2009 income taxes. The Debtor proposes to pay this class of creditors the full amount of their allowed claims, according to the following terms:

6

2.4.1.   The Debtor will pay the IRS $75,592.28 in equal monthly installments amortized at an interest rate of three percent (3.00%) per annum between the Effective Date and July 1, 2023.  Anticipating an Effective Date in June of 2014, these payments will be over one-hundred and eight (108) months and the approximate amount of the payments shall be $799.54.

2.4.2.   The first payment to the IRS shall be the first (1st) day of the first (1st) month following the Effective Date and payments shall continue on the first (1st) day of each month thereafter.

2.4.3.   Debtor shall have a thirty (30) day grace period before late fees or penalties are assessed.

2.4.4.   The Debtor shall have the right to prepay this class in full or in part at any time without penalty.

2.4.5.   This class of claims is impaired.

2.5.   **Class 5:  Allowed Secured Claim 14-1 of Farm Credit of Florida, ACA; First Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656.**  Farm Credit of Florida, ACA ("Farm Credit") has filed a secured claim on the Debtor's primary residence located at 5525 Christian Camp Road, Keystone Heights, Florida 32656 (the "Home") totaling $1,496,110.28 (Claim No.: 14-1) representing a first mortgage security interest in the Home. The Debtor intends to retain the Home and proposes to pay Farm Credit according to the following terms:

2.5.1.   Farm Credit will retain a secured first mortgage position on the Home in the amount of $1,496.110.28 (the "$1.4mm Mortgage").

2.5.2.  Debtor will continue making monthly principal and interest payments to Farm Credit in the amount and according to the terms outlined in their pre-petition loan documents and any modifications thereto.

2.5.3.  The balloon payment for the $1.4mm Mortgage shall be extended to January 1, 2024, and may be further extended upon agreement between Farm Credit and the Debtor.

2.5.4.  The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

2.5.5.  All other terms of the note and mortgage not amended herein shall remain in full force and effect.

2.5.6.  This class of claims is impaired.

2.6.    **Class 6:  Allowed Secured Claim 13-1 of Farm Credit of Florida, ACA; Cross Collateralized Mortgage on 5525 Christian Camp Road, Keystone Heights, Florida 32656**

Farm Credit filed secured claim 13-1 alleging a cross collateralized secured claim in the amount of $67,387.13 against the Home.  The Debtor intends to retain the Home and proposes to pay Farm Credit according to the following terms:

2.6.1.  Farm Credit will retain a secured cross collateralized mortgage position on the Home in the amount of $67,387.13 (the "$67K Mortgage").

2.6.2.  Debtor will continue making monthly principal and interest payments to Farm Credit in the amount and according to the terms outlined in their pre-petition loan documents and any modifications thereto.

2.6.3.  The balloon payment for the $67Kmm Mortgage shall be extended to January 1, 2024, and may be further extended upon agreement between Farm Credit and the Debtor.

2.6.4.  The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

2.6.5.  All other terms of the note and mortgage not amended herein shall remain in full force and effect.

2.6.6.  This class of claims is impaired.

2.7.    **Class 7:  Allowed Secured Claim of CitiMortgage, Inc.; First Mortgage on 2532 Russell Road, Green Cove Springs, Florida 32043.** CitiMortgage, Inc. ("Citi") has filed secured claim 11-1 totaling $86,627.53 representing a first mortgage security interest on the Debtor's real property located at 2532 Russell Road, Green Cove Springs, Florida 32043 ("Russell Road"). The Debtor intends to retain Russell Road and proposes to pay Citi according to the following terms:

2.7.1.  Debtor will pay Citi $86,627.53, as a secured mortgage on Russell Road amortized over thirty (30) years at a fixed interest rate of four and three quarters percent (4.75%) per annum. The monthly payment shall be approximately $451.89.

2.7.2.  The first payment to Citi on Russell Road shall be the fifth (5th) day of the first (1st) month following the Effective Date and continue on the fifth (5th) day of each month thereafter.

2.7.3.  The Debtor shall have a thirty (30) day grace period for all payments.

2.7.4.  The Debtor shall have the right to prepay this claim in full or in part at any time without penalty.

9

2.7.5.   All other terms of the note and mortgage not amended herein shall remain in full force and effect.

2.7.6.   This class of claims is impaired.

2.8.    **Class 8:  Allowed Secured Claim of Wells Fargo Home Mortgage; First Mortgage on 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205.**  The Debtor scheduled Wells Fargo Home Mortgage ("Wells") as holding a secured first mortgage claim on the real property of the Debtor located at 2950 St. Johns Avenue, Unit 2-A, Jacksonville, Florida 32205 ("St. Johns Ave."). The deadline for the filing of non-governmental claims in the Debtor's Case was November 26, 2013 (the "Claims Deadline"). Wells did not file a secured or unsecured claim in relation to the first mortgage on St. Johns Ave. before the Claims Deadline.

2.8.1.   Debtor proposes to surrender St. Johns Ave. to Wells Bank in full satisfaction of its claim through a deed in lieu of foreclosure, consent to foreclosure or other such method as the Debtor and Wells may agree.

2.8.2.   This class of claims is impaired.

2.9.    **Class 9:  Secured Claim 6-1 of Compass Bank.**  Compass Bank ("Compass") filed secured claim 6-1 alleging a secured claim in the amount of $198,885.18 against real property of the Debtor located at 1462 River Lane, Green Cove Springs, Florida 32043 ("River Lane").

River Lane was sold at a foreclosure sale on June 20, 2013, see Clay County Foreclosure Case 2011-CA-001008. Debtor has filed an objection to Compass' claim 6-1 as Debtor is not the owner of the River Lane, and as such Compass' claim 6-1 is not entitled to treatment as a secured claim [Docket No.: 84]. Additionally, the Debtor has objected to Compass' claim 6-1 as an unsecured claim on the grounds that it is unliquidated and contingent. Compass shall not be entitled to any distribution under Class 8, and thus is not entitled to vote as a Class 8 creditor.

## ARTICLE 3
## MEANS FOR EXECUTION OF THE PLAN

3.1.    In order to provide adequate means for the Plan's execution the Debtor proposes:

(a) Continuation and restructuring of the Debtor's financial affairs.

(b) Curing or waiving any defaults.

(c) Extension of a maturity date or change in an interest rate or outstanding securities.

(d) Retention by the Debtor of all estate property.

(e) All payments called for by the Plan irrespective of the class of creditor will have a thirty (30) day grace period unless otherwise provided for in the Plan

(f) The Debtor may prepay, in full or in part, any claim at any time before that claim's maturity date under the Plan without penalty.

(g) Any debt that arose before the date of confirmation and any debt within the parameters of 11 U.S.C. §1141(d)(1) will be discharged to the extent not provided for in the Plan or in the Order of Confirmation.

(h) Except as otherwise provided in the Plan or in the Order Confirming the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

(i) Except as provided in subsection 11 U.S.C. §1141(d)(2) and (d)(3) and as otherwise provided in the Plan or in the Order Confirming the Plan, after confirmation of the Plan and discharge of the Debtor, the property dealt with by the Plan is free and clear of all claims and interests of creditors.

3.2.    All claims and causes of action in favor of the Debtor, including but not limited to the filing of objections to claims, are hereby reserved and retained to be prosecuted before and after confirmation and the Debtor expressly reserves any rights and powers that the Debtor may enjoy as the debtor-in-possession to be utilized after confirmation.

11

3.3.    (a) Pursuant to 11 U.S.C. §1141(a) all of the provisions of this Plan will bind all creditors of the Debtor, whether or not the claims or interests of such creditor is impaired under this Plan and whether or not such creditor has accepted this Plan.

(b) Confirmation of this Plan will vest all of the property of the estate in the Debtor.

(c) Except as otherwise provided in this Plan, after confirmation of this Plan and discharge of the Debtor, the property dealt with by this Plan shall be free and clear of all claims and interests of creditors, whether such claims are in the nature of consensual liens or involuntary liens, including judgment liens.

(d) Pursuant to 11 U.S.C. §1141(d)(5), completion of all payments under this Plan shall discharge the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in §502(g), §502(h), or §502(i) of this Title whether or not a proof of the claim based on such debt is filed or deemed filed under §501 of this Title, such claim is allowed under §502 of this Title, or the holder of such claim has accepted the Plan.

(e) The Court may, however, upon motion and hearing, at its discretion administratively close this case without entry of a discharge until all payments under the Plan have been made.  Upon completion of all payments under the Plan, or as otherwise available to the Debtors under Section 1141(d)(5)(B) of the Bankruptcy Code, the Debtor intends to file a motion to reopen the case for the limited purpose of obtaining a discharge.

(f) The Debtor is not entitled to a discharge in this case until completion of all payments under the Plan.  To the extent that the case is dismissed or converted to one under Chapter 7, then the Creditor's liens shall be restored to pre-petition status and amount, with credit for any post-petition payments received (as applied under the pre-petition contractual status).

12

## ARTICLE 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will have been deemed to have rejected all executory contracts and/or

unexpired leases not expressly assumed on or before the date of the order confirming the Plan.

(signature page follows)

Dated this 17ᵗʰ day of January 2014

_____
John William O'Connor

**LANSING ROY, P.A.**

/s/ William B. McDaniel
**Christopher R. DeMetros, Esquire**
Florida Dar No. 0863467
**Kevin B. Paysinger, Esquire**
Florida Bar No. 0056742
**William B. McDaniel, Esquire**
Florida Bar No. 0084469
Attorney for Debtors
1710 Shadowood Lane, Suite 210
Jacksonville, FL 32207
(904) 391-0030

14

# EXHIBIT "B"

John W. O'Connor
Liquidation Analysis: Assets as of Petition Date

| Asset | Value | Liquidation % | Liquidated Value | Lien(s) | Net Value | % DEBTOR Ownership | DEBTOR Ownership Value | Exemption / Restriction | Value of Exemption /Restriction | Net to Estate |
|---|---|---|---|---|---|---|---|---|---|---|
| 5525 Christian Camp Road, Keystone Heights, FL 32656 owned jointly with Non-filing Spouse | $1,600,000.00 | 80% | $1,280,000.00 | $1,490,241.00 | -$210,241.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| Mobile Home located at 5525 Christian Camp Road, Keystone Heights, FL 32656 owned jointly with Non-filing Spouse | $30,000.00 | 80% | $24,000.00 | $1,490,241.00 | -$1,466,241.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| 2532 Russell Road, Green Cove Springs, FL 32043 owned jointly with Non-filing Spouse | $100,000.00 | 80% | $80,000.00 | $138,300.41 | -$58,300.41 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| 2950 St. Johns Ave., Unit 2-A, Jacksonville, FL 32205 | $194,700.00 | 80% | $155,760.00 | $190,852.00 | -$35,092.00 | 100% | $0.00 | | | $0.00 |
| Cash on Hand | $100.00 | 100% | $100.00 | $0.00 | $100.00 | 100% | $100.00 | | | $100.00 |
| VyStar Checking #8901 | $19.85 | 100% | $19.85 | $0.00 | $19.85 | 100% | $19.85 | | | $19.85 |
| VyStar Savings #0010 | $15.03 | 100% | $15.03 | $0.00 | $15.03 | 100% | $15.03 | | | $15.03 |
| Equitable Interest in Compass Bank Account #7474 | $0.43 | 100% | $0.43 | $0.00 | $0.43 | 100% | $0.43 | | | $0.43 |

| | | | | | | | | 11 U.S.C. 522(b)(3)(B) | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Household Goods, Furnishings and Collectables owned jointly with Non-filing Spouse | $14,895.00 | 80% | $11,916.00 | $0.00 | $11,916.00 | 100% TBE | $11,916.00 | | 100% | $0.00 |
| Mens Clothing and Jewelry | $110.00 | 80% | $88.00 | $0.00 | $88.00 | 100% | $88.00 | | | $88.00 |
| Firearms and Hobby Equipment | $500.00 | 80% | $400.00 | $0.00 | $400.00 | 100% | $400.00 | | | $400.00 |
| ODC Land Profit Sharing Plan | $19,376.22 | 100% | $19,376.22 | $0.00 | $19,376.22 | 100% | $19,376.22 | Fla. Stat. Ann. 222.21(2) | 100% | $0.00 |
| Apple Parking Lot, LLC | $100.00 | 80% | $80.00 | $0.00 | $80.00 | 10% | $8.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| East West Commerce Center, LLC | $0.00 | 80% | $0.00 | $0.00 | $0.00 | 10% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| East West Retail Center, LLC | $0.00 | 80% | $0.00 | $0.00 | $0.00 | 10% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Crawfish, LLC | $500,000.00 | 80% | $400,000.00 | $973,221.00 | -$573,221.00 | 10% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Crossings, LLC | $100.00 | 80% | $80.00 | $227,900.00 | -$227,820.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Crossings Retail, LLC | $909,000.00 | 80% | $727,200.00 | $1,970,003.00 | -$1,242,803.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Forum Commons, LLC | $100.00 | 80% | $80.00 | $134,989.00 | -$134,909.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Forum, LLC | $0.00 | 80% | $0.00 | $0.00 | $0.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Forum Retail, LLC | $1,417,000.00 | 80% | $1,133,600.00 | $3,170,880.00 | -$2,037,280.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Forum Theatre, LLC | $6,872,000.00 | 80% | $5,497,600.00 | $6,461,336.00 | -$963,736.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| TownCenter Forum Office, LLC | $500,000.00 | 80% | $400,000.00 | $295,476.00 | $104,524.00 | 95% | $99,297.80 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Island Walk II, LLC | $100.00 | 80% | $80.00 | $189,841.00 | -$189,761.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Island Walk , LLC | $0.00 | 80% | $0.00 | $0.00 | $0.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Island Walk IV, LLC | $4,000,000.00 | 80% | $3,200,000.00 | -$1,210,631.00 | 95% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Fleming Island Medical Building, LLC | $1,105,000.00 | 80% | $884,000.00 | $1,526,808.00 | 89.1% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Shoppes of Eagle Harbor, Ltd. | $4,100,000.00 | 80% | $3,280,000.00 | -$778,297.00 | 89.1% | $0.00 | | | $0.00 |
| East West Offices I, LLC | $325,000.00 | 80% | $260,000.00 | -$67,214.00 | 90% | $0.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Fleming Island Business Center, Ltd. | $1,645,000.00 | 80% | $1,316,000.00 | $2,300,656.00 | 89.1% | $0.00 | | | $0.00 |
| Fleming Island Commercial Building, LTD | $743,000.00 | 80% | $594,400.00 | $720,694.00 | 44.75% | $0.00 | | | $0.00 |
| Fleming Island Limited Partnership, Ltd. | $0.00 | 100% | $0.00 | $0.00 | 9.9% | $0.00 | | | $0.00 |
| ZZ Studios, inc. | $0.00 | 100% | $0.00 | $0.00 | 50% | $0.00 | | | $0.00 |
| Delta Shamrock Farms II, LLC | $40,000.00 | 80% | $32,000.00 | $32,000.00 | 50% | $16,000.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| Delta Shamrock Farms IV, LLC | $100,000.00 | 80% | $80,000.00 | $64,242.00 | 100% | $15,758.00 | | | $15,758.00 |
| O2B Kids 7, LLC | $50,000.00 | 100% | $50,000.00 | $50,000.00 | 2% | $1,000.00 | Fla. Stat. Ann. 608.433 | Charging Lien | $0.00 |
| O'Connor Development Corp. | $0.00 | 100% | $0.00 | $0.00 | 100% | $0.00 | | | $0.00 |
| AR: Island Walk, LLC | $476,285.00 | 0% | $0.00 | $0.00 | 100% | $0.00 | | | $0.00 |
| AR: Florida CMS, LLC | $386,989.00 | 0% | $0.00 | $0.00 | 100% | $0.00 | | | $0.00 |
| 1999 Trailer | $200.00 | 80% | $160.00 | $160.00 | 100% | $160.00 | | | $160.00 |
| Farm Animals owned jointly with Non-filing Spouse | $25,000.00 | 70% | $17,500.00 | $17,500.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| Farm Equipment owned jointly with Non-filing Spouse | $40,000.00 | 80% | $32,000.00 | $32,000.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |

| Description | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Personal Property in Storage located at 3230 US 17 North owned jointly with Non-filing Spouse | $10,000.00 | 80% | $8,000.00 | $0.00 | $8,000.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| Antique Rugs in Storage located at 1709 Blanding Blvd. owned jointly with Non-filing Spouse | $20,000.00 | 80% | $16,000.00 | $0.00 | $16,000.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| Personal Property located at 1590 Island Lane, Suite 2B, Fleming Island, FL 32003 owned jointly with Non-filing Spouse. | $3,345.00 | 80% | $2,676.00 | $0.00 | $2,676.00 | 100% TBE | $0.00 | 11 U.S.C. 522(b)(3)(B) | 100% | $0.00 |
| | $0.00 | 0% | $0.00 | $0.00 | $0.00 | | $0.00 | | | |

| | |
|---|---|
| Total | $16,541.31 |
| Less Personal Property Exemptions | $6,000.00 |
| Total for Administration | $10,541.31 |
| Less Cost of CH7 Administration (20%) | $2,108.26 |
| Less Priority Secured Creditors | $75,592.28 |
| Less Priority Unsecured Creditors | $6,195.47 |
| Net to Unsecured Creditors | $0.00 |